**Erin RILEY, Appellant,**

v.

**John S. FOLEY, Appellee.**

Superior Court of Pennsylvania.

Argued June 26, 2001.
Filed Sept. 10, 2001.

Linda A. Kerns, Philadelphia, for appellant.

E. Garrett Gummer, Philadelphia, for appellee.

Before: HUDOCK, STEVENS, and POPOVICH, JJ.

STEVENS, J.

¶ 1 This is an appeal from the child support order entered in the Court of Common Pleas of Montgomery County. On appeal, Mother contends that the trial court erred in calculating child support under the Pennsylvania Support Guidelines, instead of the dictates of *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). Specifically, Mother contends that, in determining whether the Pennsylvania Support Guidelines apply, the trial court erred in calculating Father's monthly net income since (1) the trial court failed to consider the testimony, (2) the trial court failed to show support for its findings of fact, (3) Father's testimony regarding his earning capacity is self-serving, (4) the trial court erred in failing to accept into evidence Father's 1997 tax return, (5) the trial court erred in failing to consider the inclusion/exclusion of the income Father received from the liquidation of his stocks, (6) the trial court erred in failing to indicate whether it was amortizing the income Father earned from the liquidation of his stocks from the date of the petition for modification and J.F.'s eighteenth birthday or whether it was annualizing the amount, and (7) the trial court erred in failing to consider Mother's child related expenses. In addition, Mother contends that the trial court erred in giving Father credit for shared custody from June 1, 2000, instead of January 13, 2001. We affirm with regard to all of the issues concerning the calculation of Father's monthly net income and the application of the Pennsylvania Support Guidelines, but we reverse as to Mother's contention regarding the credit given to Father, which is an issue of first impression.

The parties were married on November 10, 1990. Their son, J.F., was born on July 27, 1992.[1] The parties separated on September 1, 1996, and a Divorce Decree was issued on September 4, 1998.

The parties' child lived with [Father] following their divorce until March 1, 1998 at which time the child went to live with [Mother] pursuant to a custody order from Chester County. [Father] and [Mother] calculated child support based upon the Pennsylvania State guidelines, using the amounts listed on their pay stubs.

On October 23, 1997, a Custody Order was entered in the Court of Common Pleas of Chester County, which provided for shared physical custody of the parties' son, J.F. [Specifically, the order provided that] "in the event Father relocates to an area that is easily accessible to the child's school, Father may have shared physical custody of the child on a $^{50}\!/\!_{50}$ basis."

As of June 1, 2000, [Father] moved into the area in compliance with the October 23, 1997 order. However, [Mother] refused to permit the child to live with [Father] fifty percent of the time, and continued to refuse to do so until such time as she was ordered by the court in Chester County. The court ordered the transfer to take place in January so as not to disrupt the child during the course of the school year.

On April 24, 2000, [Mother] filed [a Complaint for Support] in Montgomery County. On June 6, 2000, a Montgomery County Domestic Relations Officer issued an interim Order determining that [Father's] monthly net earning capacity was $14,325.00 and that [Moth-

1. Father also has three children from a subsequent marriage. Father has divorced his sub- sequent wife.

er's] monthly net income was $1,789.00. At this juncture, [Father] was ordered to pay $2,084.00 per month in child support.

On August 16, 2000, after holding a support conference, the Support Conference officer made several findings of fact and recommendations to the Court as the support to be paid by [Father]. The Officer determined that [Father's] monthly net earning capacity was $12,500.00 and that [Mother]s] monthly net income was $2,000.00. [Father] was ordered to pay $1,720.00 per month in child support. Additionally, the Officer ordered that [Father] receive credit for arrearages in the sum of $1,277.00 for direct payments made between the date the petition was filed (April 24, 2000) and the date of the support conference (June 6, 2000). On August 29, 2000, Exceptions to Recommendations of the Support Conference Officer were filed.

On December 13, 2000, [the trial court] held a hearing on the Exceptions in Support. [Mother] sought an increase based on [Father's] 1999 income and the exercise of stock options in the year 2000. At the hearing, [the trial court] heard testimony from both parties.

[Father] testified that he was formerly employed by Nextlink and earned approximately $100,000.00 to $150,000.00 a year, plus bonuses. [Father's] 1999 income tax "W–2" forms reflecting $143,873.00 and $157,721.00 included exercised stock options.

[Father's] pay stub for the period ending April 1, 2000 reflected a bonus in the amount of $31,457.00; [Father's] prorated bonus for the year 2000 was roughly $8,000.00.

[Father] has been unemployed as of March 31, 2000, at which time Nextlink terminated him because his position was eliminated throughout the company. His former employer offered him a position in Virginia and another in Canada. Since his termination, [Father] has made efforts to obtain employment, including hiring an executive outplacement firm and has engaged in consulting work. The only other job offer received, which was in February of 2000, would have required [Father] to move to Seattle, Washington. [Father] testified that he could gain employment as an engineer for an annual salary of $80,000.00 to $90,000.00.

[Father] received a "severance package" at the time of his termination that awarded him stock options, and his total net from these and other options exercised in the year 2000 was approximately $730,000.00.

In 1998, during his employment, [Father] exercised stock options and gave fifty percent of the net proceeds of these options to [Mother] in accordance with their property settlement agreement.

[Father] further testified that he used some of the money received from his stock options to take his family on vacation, one to Europe and another to the beach. He also voluntarily paid off the mortgages of both of his ex-wives. [Father] provides health insurance for the parties' child of approximately one hundred dollars per month. [Father] voluntarily pays $1,916.00 per month in child support for his three children from a previous marriage.

[Mother] testified that she was employed part time at her most recent job as of March 28, 2000, and on a full time basis beginning September 9, 2000 until November 28, 2000, at which point she was terminated as a result of the company's downsizing. While working at this job part-time, [Mother] earned a net amount of $351.94 per week and while

working full-time, [Mother] earned a net amount of $571.04 per week.

[Mother] is looking for a job outside of her field because she does not believe she will find a comparable job in or around the Philadelphia area in her line of work. At the time of the hearing, [Mother] was not paying COBRA health insurance because it is covered by her most recent employer.

On January 2, 2001, [the trial court] issued our Order wherein [the trial court] made several findings regarding [Father's] support obligations. On January 17, 2001, [Mother] filed a Notice of Appeal from the [trial court's] order. Trial Court's Opinion dated 3/2/01 at 1–5. The trial court ordered Mother to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), such a statement was filed, and the trial court filed an opinion.

¶ 2 Our standard of review in this case is well settled.

Our standard of review ... is very narrow. We can reverse a support order only if we find that the order cannot be sustained on any valid ground. The decision of the trial court will not be reverse absent an abuse of discretion or an error of law. A finding that there has been an abuse of discretion 'requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.' Nevertheless, where the record demonstrates that the lower court has failed to consider all factors relevant to an award of support, the Superior Court should remand for a full evidentiary hearing.

*Gephart v. Gephart*, 764 A.2d 613, 614 (Pa.Super.2000) (citations and quotation omitted).

■ ¶ 3 Mother's first argument is that the trial court erred in calculating child support under the Pennsylvania Support Guidelines and not under *Melzer, supra*. Mother accepts the trial court's conclusion that the calculation of child support under the Pennsylvania Support Guidelines is permitted if the combined monthly net income of the parties is $15,000.00 or less.[2] However, Mother contends that the parties' combined monthly net income is $16,114.00, and, therefore, the trial court should have calculated child support under *Melzer, supra*. To wit, Mother raises seven claims regarding the calculation of Father's monthly net income.

¶ 4 Mother's first, second, and third contentions are that the trial court failed to consider the testimony, failed to show support for its findings of fact, and erred in accepting Father's self-serving testimony.

■ ¶ 5 "A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Strawn v. Strawn*, 444 Pa.Super. 390, 664 A.2d 129, 132 (1995) (quotation and quotation marks omitted). Here, at the time of the hearing, Father was unemployed and collecting unemployment compensation at the rate of $1,416.00 per month. N.T. 12/13/00 at 108.

2. We note that we agree with the trial court's conclusion that the Pennsylvania Support Guidelines are applicable if the parties' combined monthly net income is $15,000.00 or less. *See Mascaro v. Mascaro*, 764 A.2d 1085 (Pa.Super.2000) (holding that where combined after-tax family income exceeds $15,000.00 per month, determination of support must be based on factors found in *Melzer, supra;* however, where it is lower than $15,000.00, the support guidelines apply).

In the past, Father had earned approximately $100,000.00 to $150,000.00 per year, plus bonuses; however, his position at Nextlink was terminated and Father's only other offers were out of state, away from his children. N.T. 12/13/00 at 6–7, 28. Considering the detrimental effect Father's moving would have on his son, J.F., the trial court determined that it was unrealistic for Father to accept the job offers made out of state. Trial Court Opinion dated 10/10/00 at 9. Father testified that he will realistically be able to find work as an engineer in the state, making approximately $80,000.00 to $90,000.00 per year. N.T. 12/13/00 at 45. Based on all of the testimony, the trial court concluded that Father's earning capacity is $105,000.00 per year, or $8,750.00 per month. Trial Court Opinion dated 10/10/00 at 9. The trial court then reduced the amount by subtracting federal, state, and local taxes, arriving at $70,350.00 per year, or $5,862.00 per month. Trial Court Opinion dated 10/10/00 at 10. The trial court then added Father's net stock income of $730,000.00 per year, or $6,083.00 per month to the $5,862.00, arriving at a total net monthly net income of approximately $12,000.00. Trial Court Opinion dated 10/10/00 at 10.

¶ 6 With regard to Mother, she testified that, at her last job, she earned approximately $570.00 net per week. N.T. 12/13/00 at 53. Considering Mother's age, health, mental and physical condition, the trial court concluded that Mother's realistic earning capacity is approximately $2,000.00 per month.[3] Trial Court Opinion dated 10/10/00 at 9.

¶ 7 Adding Father's monthly net income of $12,000.00 to Mother's monthly net income of $2,000.00 per month equals $14,000.00, which means the Pennsylvania Support Guidelines are applicable. We find no abuse of discretion with regard to the trial court's calculation of the parties' combined monthly net income and the application of the Pennsylvania Support Guidelines in determining child support. We specifically find that the trial court supported its findings of fact and that it was the trial court's province to accept or reject Father's testimony.

■ ¶ 8 Mother's fourth contention is that, in determining Father's monthly net income, the trial court erred in failing to accept into evidence Father's 1997 tax return. Mother indicates that the trial court accepted Father's 1998 and 1999 tax returns, but argues the 1997 tax returns should also have been reviewed by the trial court. We find this issue to be waived.

¶ 9 Mother's one paragraph analysis concerning this issue is insufficient to permit meaningful review of her claim.[4] In direct contravention of the Pennsylvania Rules of Appellate Procedure, Mother failed to cite any authority supporting her position that the 1997 tax return should have been admitted into evidence. See Pa.R.A.P. 2119. She notes that the trial judge's decision is in contradiction to a decision issued by the trial judge one-month prior, but she does not discuss the issue further. We decline to become Mother's appellate counsel and develop this argument on her behalf.

■ ¶ 10 Mother's fifth argument is that the trial court failed to consider the inclu-

---

3. Mother testified that she has worked in the music business for twenty-five years, but that the industry is shrinking in the Philadelphia area. N.T. 12/13/00 at 56. She is unsure as to whether she will be able to secure future employment. N.T. 12/13/00 at 56.

4. Mother raises the issue concerning the 1997 tax return in her reply brief; however, again she fails to cite sufficient authority to support her argument.

sion/exclusion of income received from Father's liquidation of his stock in determining Father's monthly net income. We find this issue to be meritless.

¶ 11 In its January 2, 2001 order, the trial court specifically stated "[Father's] net income, including stock option income and net earning capacity concerning his background, education, and experience, is $12,000.00 per month." While the trial court did not specify which portion of Father's income was derived from the liquidation of Father's stock, it is clear that the income therefrom was included in determining Father's monthly net income.[5]

¶ 12 Mother sixth contention is that the trial court should have indicated whether it was amortizing the income Father received from the liquidation of the stock annually or from the time the petition for modification was filed until J.F.'s eighteenth birthday. We find this issue to be waived.

¶ 13 On October 28, 1999, the Pennsylvania Supreme Court filed an opinion in *Commonwealth v. Lord,* 553 Pa. 415, 417, 719 A.2d 306, 308 (1999), specifically holding that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925. Any issues not raised in a 1925(b) statement will be deemed waived." The Supreme Court reasoned that:

The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

*Lord,* 553 Pa. at 417, 719 A.2d at 308.[6]

¶ 14 In the case *sub judice,* Mother failed to include the issue regarding allocation of the liquidation of the stock in her Pa.R.A.P.1925(b) statement, and, therefore, the trial court failed to address the issue in its Pa.R.A.P.1925(a) opinion. As such, the issue is waived.

¶ 15 Mother's seventh argument is that the trial court erred in failing to consider Mother's child related expenses in determining Father's child support obligation. Mother contends that, under *Melzer, supra,* the child support order must take into account the reasonable needs of J.F. As the trial court indicated, it did not determine child support in this case under *Melzer,* but instead, calculated the amount under the Pennsylvania Support Guideline. As such, Mother's argument that the trial court's order does not comply with the spirit of *Melzer* is meritless.

¶ 16 Finally, in an issue of first impression, we must interpret Pa.R.Civ.P. 1910.16-4(c)(2). Mother argues that the trial court erred in giving Father credit for shared custody from June 1, 2000, instead of January 13, 2001. Specifically, Mother contends that the trial court erred in giv-

---

5. In its Pa.R.A.P.1925(a) opinion, the trial court thoroughly discussed how it arrived at Father's monthly net income, including specific findings with regard to the liquidation of Father's stock. Assuming, *arguendo,* the trial court erred in failing to specify in its order which portion of Father's monthly net income was attributed to the liquidation of stocks, we find it futile to remand for a finding with

regard thereto since the trial court has thoroughly addressed the issue in its opinion.

6. The holding in *Lord* has been applied to family law cases. *See Lobaugh v. Lobaugh,* 753 A.2d 834 (Pa.Super.2000) (relating to waiver in alimony case); *Giles v. Douglass,* 747 A.2d 1236 (Pa.Super.2000) (relating to waiver in child custody case).

ing Father credit for expenditures associated with shared custody from the time he was eligible for shared custody instead of when shared custody actually began.[7] We agree and remand with direction to the trial court to correct the adjustment/credit given to Father with regard to shared custody under Pa.R.Civ.P.1910.16–4(c)(2).

¶ 17 Pa.R.Civ.P.1910.16–4(c)(2) provides the following: "When the children spend equal time with both parents, and application of the formula in Part II results in obligee receiving a larger share of the parties' combined income, the court shall adjust the support obligation so that the combined income is allocated equally between the two households."[8]

¶ 18 The Explanatory Comment indicates that the purpose of Pa.R.Civ.P. 1910.16–4(c) is to permit an adjustment when both parents have spent a substantial amount of time with their child, resulting in the additional expenditure of money. That is, an obligor is entitled to a reduction in basic child support to reflect the additional time, resulting in additional expenditures, he/she has spent with a child. "When there is equal time sharing [of the child], subsection (2) reduces the support obligation ... so that the obligor does not pay more than what is necessary to spread the parties' combined income equally between the two households." Pa.R.Civ.P. 1910.16–4 Explanatory Comment–1998. Necessarily, in order to obtain an adjustment/credit for expenditures associated with shared custody, shared custody must have actually occurred. We hold that the purpose of the rule is not to give an obligor credit for money which was never spent on a child, merely because the obligor was entitled to spend time with the child. Rather, the inquiry must be to determine if obligor actually spent time with the child, resulting in an additional expenditure of money.

¶ 19 Here, there is little dispute that, as of June 1, 2000, Father was eligible for shared custody pursuant to a court order.[9] However, Father did not actually have J.F. on a $^{50}\!/\!_{50}$ basis until January of 2001. As such, J.F. has not received the benefit of any additional expenditures by Father related thereto from June of 2000 to January of 2001. Therefore, Father is not entitled to a credit with regard thereto.[10]

¶ 20 As such, we conclude that the trial court erred in making the credit retroactive to the time when Father was entitled to shared custody of his child, instead of when Father actually began having shared

---

7. We note that neither the trial court nor Father cite case law supporting the conclusion that credit is permitted when an obligor is eligible for shared custody as opposed to when actual shared custody in fact commences.

8. Since the petition in this case was filed on April 24, 2000, the March 2, 2000 amendment to Pa.R.Civ.P.1910.16–4 is applicable. We note that the Rule was amended again on October 27, 2000; however, this amendment is not applicable to the within case.

9. In 1997, the trial court gave Mother primary physical custody of J.F., but indicated that if Father moved to an area that was accessible to the child, shared physical custo-

dy on a $^{50}\!/\!_{50}$ basis was permitted. See Trial Court Opinion dated 3/2/01 at 7. Here, the trial court found that Father moved back to the area by June 1, 2000, but Mother refused to permit shared custody at this time. Subsequently, a hearing was held, and shared custody commenced on January 13, 2001.

10. We note that the fact Father's inability to engage in shared custody beginning in June of 2000 was attributable to Mother's actions does not require a different result in this case. The simple fact is that J.F. should not be deprived of a portion of child support merely because his Father was "eligible" to spend more time and make more expenditures on J.F.'s behalf, when in fact Father did not do so.

custody of his child. Since Father did not have actual shared custody of his child until January of 2001, he did not spend a substantial amount of time with his child until this time, and, presumably, did not make the expenditures associated with shared custody.

¶ 21 Affirmed in part; Reversed in part; Remanded for the recalculation of the credit due Father; Jurisdiction Relinquished.