J-S70017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER MICHAEL SLAUGHTER | : | |
| | : | |
| Appellant | : | No. 289 MDA 2017 |

Appeal from the PCRA Order December 21, 2016
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002736-2013

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 18, 2018**

Appellant, Christopher Michael Slaughter, appeals *pro se* from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The trial court previously set forth the following detailed account of the factual history of this case:

> On April 20, 2013, Officer Terry Wealand, a Sergeant with the Harrisburg City Police, was on duty assigned to the Street Crimes Unit. (Transcript of Proceedings, Trial August 11, 2014, p. 111)(Hereinafter, "N.T. Trial"). In the preceding 48 hours, Officer Wealand received information regarding a Lincoln Aviator SUV (hereinafter, "Lincoln") involved in suspected criminal activity. (N.T. Trial, p. 112). Officer Wealand obtained the plate, registration and ownership information related to the vehicle. (N.T. Trial, p. 113; p. 115). Officer Wealand began work that day at 4:00 pm. He was in uniform in a two-man marked police vehicle with his partner, Officer Jon Fustine. (N.T. Trial, p. 114).

Sitting in the parked police vehicle at Sixth and Curtin Streets in Harrisburg, the officers saw the Lincoln drive by, park and let out a passenger. The officers confirmed the plate number as that of the Lincoln previously identified to them. (N.T. Trial, p. 116). The vehicle re-entered traffic without signaling. (N.T. Trial, p. 119). Officer Wealand radioed his intention to initiate a traffic stop, followed the Lincoln a few blocks then engaged the red and blue lights. The Lincoln pulled over. (N.T. Trial, p. 120). Officer Fustine exited the police vehicle on the passenger side and took five or six steps toward the Lincoln. (N.T. Trial, p. 122). The Lincoln fled. (*Id*.). Officer Fustine returned to the vehicle. Officer Wealand radioed that the vehicle fled from the traffic stop. (*Id*.).

As Officer Wealand began to follow the Lincoln, it took off at a high rate of speed, running a stop sign. The Lincoln passed a playground and baseball field at a speed such that the back end of the Lincoln lifted into the air. (N.T. Trial, pp. 123-124; p. 131). Officer Wealand activated his sirens to alert traffic through an intersection. (N.T. Trial, p. 125). Because it was a warm spring evening, many people were out on the sidewalks and near their homes. (N.T. Trial, p. 125; pp. 268-269). The Lincoln continued accelerating. Officer Wealand chose to follow the vehicle with lights and sirens rather than engage in close pursuit. (*Id*.; pp. 180-181). Officer Wealand attempted to maintain sight of the Lincoln but realized he could not keep up with it. (N.T. Trial, p. 190; pp. 269-270).

The Lincoln entered a narrow one way street, Jefferson Street, on which parked cars lined both sides and where the speed limit was 25 miles per hour. The Lincoln swerved around cars, into empty parking stalls and ran stop signs. (N.T. Trial, p. 127). Officer Fustine observed the Lincoln nearly strike a woman pushing a child in a stroller. (N.T. Trial, p. 269). Officer Wealand slowed down and sped up to clear intersections and stop signs. (N.T. Trial, p. 128). The Lincoln picked up speed and ran stop signs. Officer Wealand observed it turn westbound. (*Id*.) Officer Wealand received information that a collision occurred involving a police vehicle. (N.T. Trial, p. 129).

At the same time, Officer Daniel Peiper, also with the Harrisburg Police Street Crimes Unit, was on street patrol in a police Chevy Tahoe with his K-9 partner, Thor, headed southbound on Sixth Street. (N.T. Trial, pp. 78-79). Officer

Peiper recalled that it was a warm spring day with many people out enjoying the weather. (N.T. Trial, p. 79). At approximately 6:30 pm, Officer Peiper saw a vehicle fleeing on Jefferson Street. (*Id*.) He suspected that the driver would reach the area he was patrolling and jump out of the vehicle. (N.T. Trial, pp. 79-80). As his vehicle coasted at a slow speed, Officer Peiper reached back to open the K-9 cage. (N.T. Trial, p. 90). He took the steering wheel and without seeing a vehicle coming, felt a large impact. (N.T. Trial pp. 79-80; pp. 90-91). Officer Peiper could not comprehend what had occurred. (*Id*.) Officer Peifer heard other officers on the radio and another K-9 officer, taking care of Thor. (N.T. Trial, p. 81).

Officer Wealand arrived at Sixth and Forrest Streets and observed what he described as resembling a bomb scene: a marked police Tahoe on its roof and another vehicle, a green Rav-4, along the sidewalk at an angle to the Tahoe. (N.T. Trial, p. 132). Officer Fustine described screaming. (N.T. Trial, p. 271). A man told Officer Wealand that his girlfriend was under the Tahoe. (N.T. Trial, p. 137). Officer Wealand looked under the Tahoe and saw a woman, Selina Martin entrapped, and the K-9 crouched on the concrete. (N.T. Trial, pp.136-137).

Officer Wealand then approached the Lincoln. The officer could see that the airbags had deployed and the driver, later identified as [Appellant], leaning over and rummaging in the center console. (N.T. Trial, p. 199). Officers removed [Appellant] through the passenger window as they could not open other windows and doors. (N.T. Trial, pp. 140-141). Officer Wealand turned over custody of [Appellant] to other officers at the scene. (N.T. Trial, p. 157).

Selina Martin, the woman trapped under the vehicle, had been sweeping the porch of her home on North Sixth Street that evening as part of a community cleanup. (Transcript of Proceedings, Jury Trial, p. 62). Ms. Martin recalled little about the events preceding the incident that day, only that she heard vehicles, then a bang. She recalled seeing a vehicle flying toward her, with no opportunity to flee. (*Id*.).

In order to speak with Ms. Martin, Officer Wealand lay down under the vehicle. (N.T. Trial, p. 152). Officer Wealand engaged her in conversation continuously, fearing that she was going to expire. Ms. Martin gained leverage against Officer

Wealand's head to push herself out from under the vehicle. (N.T. Trial, pp. 158-161).

Officer Peiper and Ms. Martin were transported to Hershey Medical Center. Officer Peiper's K-9 partner was transported to an emergency veterinary hospital.

As a result of the impact from [Appellant's] vehicle with the police Tahoe, Officer Peiper suffered a severe scalp laceration which exposed his skull causing life-threatening blood loss, a lost kidney, a broken arm requiring surgical reconstruction, a fractured hip, numerous fractured ribs, pelvic fractures, a punctured lung and nerve damage resulting in permanent numbness on his right side. (N.T. Trial, pp. 82-84; pp. 105-109). He remained in a coma for 7-8 weeks and only recalls being awake sometime in June. (N.T. Trial, pp. 80-81). Officer Peiper remained hospitalized and in rehabilitation until July 2013. (N.T. p. 84).

Officer Peiper endures relentless pain of such intensity that at one point he wanted doctors to amputate his foot. (N.T. Trial, p. 86). For an extended period of time, he required a walker or cane and assistance with basic personal care. (N.T. pp. 84-85). Officer Peiper has returned to work on a reduced schedule performing sedentary duties. (N.T. Trial, p. 87).

As a result of the incident, Ms. Martin sustained two collapsed lungs, broken ribs, a broken shoulder, a fractured spleen, laceration of the liver, a crushed pelvis, legs, wrists and arms, and cardiac injury which required numerous surgeries. (N.T. Trial, p. 67; pp. 104-105). Ms. Martin remained in an induced coma for three months. (N.T. Trial, pp. 63-64). Before the accident, Ms. Martin enjoyed excellent health, walked and rode a bicycle for fitness. Since the accident, she suffers constant pain and struggles with ordinary daily activities such including walking, standing, sitting and reaching. (N.T. pp. 67-68).

Officer Travis Pidcock, assigned to the Dauphin County Accident Reconstruction Team, participated in the search of the Lincoln. Officer Pidcock collected a baggie from the second row of the Lincoln which contained crack cocaine. In addition, he collected a bag which contained other baggies. (N.T. Trial, pp. 207-208.)

Dauphin County Chief Detective John Goshert provided expert testimony that the amount of cocaine, 6.3 grams, and its street value, $486,000, along with the possession of empty plastic bags, evidenced drug trafficking. (N.T. Trial, pp. 257-263.)

Trial Court Opinion, 9/17/15, at 3-8.

Appellant was charged with one count each of aggravated assault of a police officer, aggravated assault, fleeing or attempting to elude an officer, recklessly endangering another person, and possession with intent to deliver.[1] On August 13, 2014, a jury convicted Appellant of all five of the charges. On November 4, 2014, the trial court sentenced Appellant to serve an aggregate term of incarceration of twenty-nine and one-half to fifty-nine years.

Appellant filed a timely post-sentence motion, which the trial court denied on February 9, 2015. Appellant then took a timely direct appeal, and this Court affirmed his judgment of sentence on December 14, 2015. *Commonwealth v. Slaughter*, 432 MDA 2015, 135 A.3d 658 (Pa. Super. filed December 14, 2015) (unpublished memorandum). Appellant did not seek further review.

On March 28, 2016, Appellant filed, *pro se*, the instant PCRA petition. The PCRA court appointed counsel on April 4, 2016. On July 1, 2016, PCRA

_____

[1] 18 Pa.C.S. §§ 2702(a)(2), 2702(a)(1), 75 Pa.C.S. § 3733, 18 Pa.C.S. § 2705, and 35 P.S. § 780-113(a)(30), respectively.

- 5 -

counsel filed a motion to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On September 13, 2016, the PCRA court entered an order permitting counsel to withdraw and providing Appellant with notice of the PCRA court's intent to dismiss his petition pursuant to Pa.R.Crim.P. 907. On December 2, 2016, Appellant filed a response to the PCRA court's notice of intent to dismiss. The PCRA court dismissed Appellant's PCRA petition on December 21, 2016. This timely appeal followed.

On January 25, 2017, the PCRA court entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a timely Pa.R.A.P. 1925(b) statement, which raised a mind-boggling seventy-seven vague issues. On February 27, 2017, the PCRA court filed a statement in lieu of an opinion.

Appellant now presents the following issues for our review:

1. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE APPELLANT'S COUNSEL'S INEFFECTIVENESS FOR NOT PERFECTING A TIMELY PETITION FOR ALLOWANCE OF APPEAL TO THE PENNSYLVANIA SUPREME COURT?

2. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO FULLY INVESTIGATE APPELLANT'S CASE AND PRESENT A PROPER DEFENCE?

3. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO SUBPOENA CORPORAL MILO HOOPER TO TESTIFY AT APPELLANT'S TRIAL?

4. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR NOT CORRECTING WHICH JUROR NEEDED TO BE REMOVED FROM THE JURY PANEL?

5. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO EITHER OBJECT OR FILE A MOTION TO LIMINE IN ORDER TO FORBID THE JURY FROM HEARING PREJUDICIAL TESTIMONY ABOUT APPELLANT BEING INVOLVED IN CRIMINAL ACTIVITY?

6. WAS PCRA COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO OBJECT TO HEARSAY TESTIMONY?

7. DID THE PCRA COURT ERR IN DISMISSING APPELLANT'S PCRA PETITION WITHOUT CONDUCTING AN EVIDENTIARY HEARING?

Appellant's Brief at viii-ix (verbatim).

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Before addressing the merits of Appellant's issues, we must determine whether those issues are properly before us. The PCRA court has asserted that Appellant's Pa.R.A.P. 1925(b) statement lacks the specificity required by Pa.R.A.P. 1925(b)(4), and thus, appellate review is precluded. PCRA Court Opinion, 2/27/17, at 1-2. We agree.[2]

A concise statement of errors complained of on appeal must be specific enough for the trial court to identify and address the issues the appellant wishes to raise on appeal. **Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006) (quoting **Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa. Super. 2006)). Pennsylvania Rule of Appellate Procedure 1925 provides that a Rule 1925(b) statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

This Court has considered the question of what constitutes a sufficient Pa.R.A.P. 1925(b) statement on numerous occasions and has established that "[an] appellant's concise statement must properly specify the error to

---

[2] As previously indicated, on January 25, 2017, the PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, which was due within twenty-one days. On February 13, 2017, Appellant filed a ten-page document entitled "'1925(B)' Concise Statement of Matters of Complaint." However, the mere fact that Appellant timely complied with the PCRA court's directive does not automatically equate to proper preservation of issues.

be addressed on appeal." ***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa. Super. 2011). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." ***Id***. (brackets, internal quotation marks, and citation omitted).

The compulsory requirement of adhering to Pa.R.A.P. 1925 is captured in the following excerpt from ***Kanter v. Epstein***, 866 A.2d 394 (Pa. Super. 2004):

> In ***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (Pa. 1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925." ***Lord***, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." ***Id***. This Court explained in ***Riley v. Foley***, 783 A.2d 807, 813 (Pa. Super. 2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686-[6]87 (Pa. Super. 2001). "Even if the trial court correctly guesses the issues Appellants raise[] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." ***Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa. Super. 2002).

***Kanter***, 866 A.2d at 400.

Our law further makes clear that satisfaction of Pa.R.A.P. 1925 is not simply a matter of filing any statement. Rather, the statement must be

concise and sufficiently specific and coherent as to allow the trial court to understand the specific allegation of error and offer a rebuttal. These requirements are evident in the following language from *Dowling*:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> . . . While *Lord* and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that *Lord* should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal. In the instant case, Appellant's Concise Statement was not specific enough for the trial court to identify and address the issue Appellant wished to raise on appeal. As such, the court did not address it. Because Appellant's vague Concise Statement has hampered appellate review, it is waived.

*Dowling*, 778 A.2d at 686-687 (citations and quotation marks omitted).

> Moreover, as we stated in *Reeves*:
>
> There is a common sense obligation to give the trial court notice as to what the trial court should address in its Rule 1925(a) opinion. While there is a middle ground that [an appellant] must travel to avoid having a Rule 1925(b) statement so vague that the trial judge cannot ascertain what issues should be discussed in the Rule 1925(a) opinion or so verbose and lengthy that it frustrates the ability of the trial judge to hone in on the issues actually being presented to the appellate court, *see Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004), that is not an onerous burden to place on [an appellant]. It only requires using a little common sense.

*Reeves*, 907 A.2d at 2-3.

In essence, the purpose of requiring a concise statement of matters complained of on appeal under Pa.R.A.P. 1925(b) is to allow the trial court to easily discern the issues an appellant intends to pursue on appeal and to allow the court to file an intelligent response to those issues in an opinion pursuant to Pa.R.A.P. 1925(a). Appellant's Pa.R.A.P. 1925(b) statement fails in this regard.

The PCRA court offered the following thorough explanation regarding why the deficiencies of Appellant's Pa.R.A.P. 1925(b) statement compels our conclusion:

> It is well-established that "Appellant's concise statement must properly specify the error to be addressed on appeal." **Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (citation omitted). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issues an appellant wishes to raise on appeal." **Id**. Further, the Pennsylvania Superior Court may find a waiver where a concise statement is too vague. **Id**. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted). A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of a no Concise Statement at all. **Id**. at 686-[6]87.
>
> In the instant matter, Appellant has raised … boilerplate claim[s] that [fail] to identify any specific issues on appeal. Instead, Appellant filed a Concise Statement containing 77 allegations of error.[1] Many of these allegations have been previously addressed and/or have been waived for failure to raise on direct appeal. Because Appellant gave . . . boilerplate claim[s] that failed to identify any specific issues on appeal, Appellant has waived any issues he may have had on appeal in this matter by failing to identify any specific issue on appeal.

- 11 -

> See Pa.R.A.P. 1925(b)(4); **Commonwealth v. Hansley**, 24 A.
> 3d 410, 415 (Pa. Super. 2011).
>
> > [1] "While criminal defendants often believe that the
> > best way to pursue their appeals is by raising the
> > greatest number of issues, actually, the opposite is
> > true: selecting the few most important issues
> > succinctly stated presents the greatest likelihood of
> > success." **Commonwealth v. Ellis**, 626 A.2d 1137,
> > 1140 (Pa . 1993). "Appellate advocacy is measured
> > by effectiveness, not loquaciousness." **Id**., at 1140-
> > 1141 (citation omitted). This is because "[l]egal
> > contentions, like the currency, depreciate through
> > over issue. The mind of an appellate judge is
> > habitually receptive to the suggestion that a lower
> > court committed an error. But receptiveness
> > declines as the number of assigned errors increases.
> > Multiplicity hints at lack of confidence in any one[.]"
> > **Commonwealth v. Robinson**, 864 A.2d 460, 480
> > n.28 ( Pa. 2004) (quoting Robert H. Jackson, J.,
> > "Advocacy Before the United States Supreme Court,"
> > 25 Temple L.Q. 115, 119 (1951)).
>
> Additionally, PCRA counsel and this Court have reviewed
> the instant matter and determined that there are no genuine
> issues and Appellant is not entitled to relief. We further note the
> sound reasoning in PCRA counsel's Motion to Withdraw and
> incorporate our Memorandum Order, filed December 21, 2016
> that dismissed Appellant's PCRA petition.

PCRA Court Opinion, 2/27/17, at 1-2.

Indeed, our review of the certified record reflects that this Pa.R.A.P. 1925(b) document rambles on for ten pages in a barely coherent fashion listing seventy-seven allegations of error. The ultimate result of Appellant's presentation is that any issues Appellant wishes to raise in this appeal are lost in the midst of the rambling discourse laid out in his Pa.R.A.P. 1925(b) statement. Thus, due to the presentation of Appellant's Pa.R.A.P. 1925(b)

statement, the PCRA court was precluded from addressing any issues in its Pa.R.A.P. 1925(a) document. Given the foregoing and our agreement with the PCRA court's analysis, we conclude that Appellant's challenges to the PCRA court's order denying post-conviction relief are waived.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/18/2018