J-S49037-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHEILA WAGNER | : | |
| | : | |
| Appellant | : | No. 1653 WDA 2019 |

Appeal from the PCRA Order Entered October 22, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002968-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    FILED NOVEMBER 12, 2020

Appellant Sheila Wagner appeals pro se from the Order entered in the Court of Common Pleas of Allegheny County on October 22, 2019, denying her petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm.

The PCRA court set forth the relevant procedural history and facts herein as follows:

PROCEDURAL HISTORY

Appellant was charged by criminal information (CC 201702968) with one count each of criminal homicide,[1] conspiracy,[2] tampering with evidence,[3] and abuse of corpse.[4] On October 26, 2017, Appellant plead guilty pursuant to a negotiated plea agreement to one count each of third degree murder;[5] conspiracy (third degree);[6] tampering with evidence;[7] and abuse of corpse.[8]

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9545.

On the same date, Appellant was sentenced by the Trial Court to the following:

Count one: third degree murder — ten to thirty years incarceration;

Count two: conspiracy (third degree murder) — two years probation to be served consecutive to the period of incarceration imposed at count one;

Count three: tampering with evidence — two years probation to be served consecutive to the period of probation imposed at count two; and

Count four: abuse of corpse — two years probation to be served consecutive to the period of probation imposed at count three.

Appellant failed to file any post-sentence motions or a direct appeal.

On July 9, 2018, Appellant filed a "Motion for Modification of Sentence Nunc Pro Tunc," which was treated as a Post-Conviction Relief Act Petition. Thereafter, the Trial Court appointed counsel who subsequently filed a Turner/Finley letter and petition to withdraw.

On January 24, 2019, Appellant filed a request for a Grazier hearing and said hearing was held on May 14, 2019, along with PCRA counsel's request to withdraw and Turner/Finley No-Merit Letter.

On July 16, 2019, the Trial Court entered an Order granting counsel's request to withdraw and Turner/Finley No-Merit Letter.

On October 22, 2019, the Trial Court entered an Order denying the PCRA.

This timely appeal follows.

* * *

FINDINGS OF FACT

At Appellant's guilty plea proceeding, the Commonwealth provided the following recitation of evidence that would have been presented at trial:

On Tuesday, February 14, 2017, the McKees Rocks Police Department received a call from the victim's brother, Frank Peless, P-E-L-E-S-S, who reported his brother Ron missing. Frank stated that his brother lived at 1242 Vine Street, Apartment 5B in McKees Rocks. And McKees Rocks Police Chief Deliman, D-E-L-I-M-AN, and

- 2 -

Officer Pelkington went to that location and found the apartment to be secure. They knocked on the door and received no answer. And followed up the next day with the same. Then on Thursday, February 16, Officer Pelkington returned to Apartment 5B and had the maintenance director to the apartments key him inside. Officer Pelkington went to the doorway of the single bedroom in the apartment and observed what appeared to be a person wrapped in numerous blankets with an electric cord wrapped around the blankets.

Officer Pelkington pronounced the person who was later identified as Ronald Peless deceased at 11:35 a.m. and secured the scene. Allegheny County Homicide Detective Todd Dolfi along with Scientist Emily Wilkinson and Susan Stanich processed the scene and photographed bloody fingerprints and palm prints on the bedroom wall and the decomposing body of Ron Peless wrapped in several layers of comforters and blankets. Mr. Peless had also sustained what appeared to be multiple lacerations to his throat area. Investigators recovered an approximately eight-inch box cutter wrapped inside the blanket with Mr. Peless that was located near his genital. High speed blood spatter and cast off was noted on the walls and ceiling and documented in the bedroom where the victim was found. And investigators also recovered a pantyliner that someone had stuck on the bedroom wall near the blood and victim's body. Peless was transported to the Allegheny County Office of the Medical Examiner and an autopsy was conducted by Doctor Ashton Ennis, E-N-N-I-S, on February 17 of this year. Doctor Ennis determined that the cause of death was stab and incised wounds of the head, neck, trunk and extremities. There were in excess of 30 stab and incised wounds. And the manner of death was homicide.

During their investigation County Homicide detectives learned that two individuals, Sheila Wagner and Robert Davies, had recently been staying with the victim. They also learned that Sheila Wagner's address on her Pennsylvania driver's license was 708 Chartiers Avenue, Apartment 5 in McKees Rocks. And on February 16 Detectives Pat Miller and Sergeant Scott Scherer went to that location and were met by resident Jeff Tyniec, T-Y-N-I-E-C. Tyniec initially stated that he and

Wagner were in a relationship and that he had not seen her since Super Bowl Sunday, which was February 5. Detectives asked Tyniec for permission to search his apartment. He agreed and signed a written Consent to Search Form. During that search the detectives located a bloody coat hanging on a door and several pairs of bloody shoes. Those items were sent to the Allegheny County Crime Lab for testing.

On the same date detectives interviewed Jeff Tyniec at Allegheny County police headquarters. He did provide an audio and video recorded interview. He stated that his girlfriend, Ms. Wagner, had contacted him by phone at approximately 9:00 a.m. on a Thursday morning, which he believed to be the morning of February 2. Specifically, Wagner told Mr. Tyniec that on the night before, being the night of Wednesday, February 1, she and her friend Robert Davies, nicknamed Rabbit, were staying at Ron's residence on Vine Street. She asked for Mr. Tyniec's help. He met her outside of his apartment and walked with her to Ron's apartment. She said that while she and Rabbit were together in the bedroom of Ron's apartment, Ron came into the room and attempted to sexually assault her, and Wagner stated that Rabbit had grabbed an iron and struck Ron multiple times in the head. She then told Mr. Tyniec that she had slashed Ron with a box cutter. Wagner also enlisted Tyniec's help to come to Ron's apartment and help them clean up. Tyniec stated he assisted both Wagner and Rabbit, Robert Davies, by helping to wrap Ron's body with a blanket and tie it with a cord. Tyniec also stated that he and Davies discarded a bloody broken iron in a trash bag. On Friday, February 17, McKees Rocks Police Officers Dave Finnerty and --excuse me Stow Township Officer Charles Wilker located both Sheila Wagner and Robert Davies together in a hotel room at the Neville Island Motel.

Davies was interviewed by Detective Steve Hitchings at County Police headquarters. That interview was audio and video recorded. Davies stated that he was present the night Ron was killed but that he had only struck Ron with a closed fist and he had not struck Ron with an iron, and that he believed he was defending Ms. Wagner from assault. Wagner was also interviewed by Detectives Todd Dolfi and Tom Foley. That interview was also audio

and video recorded and Wagner repeatedly stated that she did not know Ron was dead and that she had nothing to do with his death.

Had we proceeded to trial, the Commonwealth also would have presented in greater depth the lab reports, at Lab Number 17 LAB 01640, and the testimony of numerous scientists. Specifically, Scientist Stephanie Nickolas, N-I-C-K-O-L-A-S, and Betsy Wisben examined the bloody shoes and bloody coat recovered at Jeff Tyniec's apartment and found that brown boots, Nike shoes, Nike boots and a left Fila shoe all contained DNA from two or more contributors, and that the DNA profile of the major contributor on each of those items matched the DNA profile obtained from the reference sample of the victim, Ron Peless.

The scientists also examined the pantyliner that was recovered from the victim's bedroom wall, specifically, an area of fluorescents on the top of the pantyliner was examined and the data indicated again the existence of DNA from two or more contributors. The DNA profile of the major contributor matched the DNA profile obtained from the reference sample of Sheila Wagner. And all of those available for comparison. Additionally, Scientist Jason Clark examined the three digital images of bloody fingerprints and palm prints on the walls of the bedroom where the victim was found. And he determined that those images included two latent palm prints and one latent fingerprint and all three belonged to Sheila Wagner.

(G.T. 6-12).[9]

_____

[1] 18 P.S. § 2501(a).
[2] 18 Pa. C.S. § 903(a)(1).
[3] 18 Pa. C.S. § 4910(1).
[4] 18 P.S. § 5510.
[5] 18 P.S. § 2502(c).
[6] 18 P.S. §903
[7] 18 Pa. C.S. § 4910(1).
[8] 18 P.S. § 5510.
[9] The designation "G.T." refers to Guilty Plea Transcript, October 26, 2017.

PCRA Court Opinion, 6/8/20, at 1-6.

On November 15, 2019, the PCRA court filed its Order directing Appellant to file a concise statement of the matters complained of on appeal, and Appellant did so on November 26, 2019. The PCRA court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on June 8, 2020.

In her brief, Appellant presents the following five claims for this Court's review:

A. The Trial Court erred in determining if malice supported [Appellant's] conviction of the third degree murder charge?

B. Did Trial Court err in not considering alleged victim's history of physical and sexual abuse?

C. Did Trial Court err in not considering Appellant's mental health and sexual abuse history?

D. Did Trial Court err in not taking self-defense into consideration?

E. Was counsel ineffective throughout Appellant's trial and appeals?

Brief for Appellant at 4.

This Court's standard of review of a PCRA court's grant or denial of post-conviction relief is limited to examining whether the latter's determination is supported by the evidence of record and whether it is free of legal error. Commonwealth v. Morales, 701 A.2d 516, 520 (Pa. 1997) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356 n. 4 (Pa. 1995)). In addition, where, as here, a petitioner claims that she received ineffective assistance of counsel, the Pennsylvania Supreme Court has stated that:

a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

Commonwealth v. Johnson, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted). Furthermore, this Court has stated:

A criminal defendant has the right to effective counsel during a plea process as well as during a trial. Hill v. Lockhart, 474 U.S. 52 … (1985). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Commonwealth v. Allen, … 732 A.2d 582 ( [Pa.] 1999). Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " Hill, 474 U.S. at 56, … (quoting McMann v. Richardson, 397 U.S. 759, 771 … (1970)); [s]ee also Tollett v. Henderson, 411 U.S. 258, 267 … (1973) (holding that a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he re received from counsel was not within the standards set forth in McMann[ ]").

Commonwealth v. Hickman, 799 A.2d 136, 141 (Pa.Super. 2002).

In her first four questions, Appellant sets forth various claims of trial court error and in doing so completely ignores the fact that she was not convicted following a trial but, rather, entered into a negotiated guilty plea. For example, in developing her arguments in her appellate brief, Appellant repeatedly refers to her "convictions" and cites to caselaw where trials had led to convictions. She highlights certain evidence, like the victim's alleged past behavior toward her and her actions of self-defense, which she asserts should have been considered by the court at trial. See Brief for Appellant at 7-15.

To be eligible for relief pursuant to the PCRA, Appellant must establish, inter alia, that her conviction or sentence resulted from one or more of the enumerated defects found in 42 Pa.C.S.A. § 9543(a)(2) and that the issues she raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

Appellant entered into a negotiated plea agreement which the trial court accepted, and Appellant was sentenced in accordance with the agreed-upon plea. Despite the fact that she could have done so, Appellant failed to file either a timely post-sentence motion or a direct appeal seeking review of the

first four claims she presents in her PCRA petition.[2]   As such, because Appellant failed to timely raise these issues on direct appeal, she has waived them.

Appellant's final issue challenges trial counsel's effectiveness through her "trial and appeals."  As previously stated, Appellant was not tried, and she did not file a direct appeal following her negotiated guilty plea and sentencing.

In addition, in her concise statement Appellant phrased this claim as follows:

> 5. Trial Court erred in determining ineffective assistance of counsel for failure to investigate, failure to present evidence, and failure to communicate plea and appellate options.

_____

[2] We note that Appellant's viable claims on direct appeal would have been limited, for "[g]enerally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." Commonwealth v. Morrison, 173 A.3d 286, 290 (Pa.Super. 2017) (citation omitted). Further, when, as is the case herein,

> the plea agreement contains a negotiated sentence which is accepted and imposed by the sentencing court, there is no authority to permit a challenge to the discretionary aspects of that sentence. If either party to a negotiated plea agreement believed the other side could, at any time following entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement. Permitting a discretionary appeal following the entry of a negotiated plea would undermine the designs and goals of plea bargaining, and would make a sham of the negotiated plea process[.]

Id. (citation omitted).

See Concise Statement of Errors Complained of on Appeal Pa.R.A.P. § 1925(b) at ¶ 5.

In its Opinion Pursuant to Pa.R.A.P. 1925(a), the PCRA court found Appellant had waived this issue because her concise statement "utterly failed" to specify the manner in which Appellant deemed counsel had failed to investigate and present evidence in her case and communicate with her. PCRA Court Opinion, 6/8/20 at 9. In the alternative, the PCRA court found that even if Appellant properly had preserved this claim, it lacked merit. Id. at 10-13. Following our review, we conclude that Appellant's challenge to trial counsel's effectiveness is waived because her Rule 1925(b) statement did not clearly specify the errors that she intended to challenge on appeal.

An appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues she wishes to raise on appeal. See Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). In addition,

> "[t]his Court explained in Riley v. Foley, 783 A.2d 807, 813 (Pa.Super. 2001), that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal.
> A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. See Commonwealth v. Dowling, 778 A.2d 683, 686-687 (Pa. Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] … the sufficiency issue is waived [on appeal].
>
> Commonwealth v. Tyack, 128 A.3d 254, 260 (Pa.Super. 2015) (citation omitted). "Even if the trial court correctly guesses the issues Appellant[ ] raise[s] on appeal and writes an opinion pursuant to that supposition the issues are still waived." Kanter v. Epstein, 866 A.2d 394, 400 (Pa.Super. 2004) (citation omitted), appeal denied, 584 Pa. 678, 880 A.2d 1239 (2005), cert. denied, Spector, Gadon & Rosen, P.C. v. Kanter, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006).

Commonwealth v. Bonnett, 2020 WL 9635241, at *7-8 (Pa.Super. Sept. 22, 2020).

Herein, Appellant's Rule 1925(b) statement is a blanket statement wherein she baldly declares trial counsel was ineffective. However, the statement fails to specify any actions or omissions on counsel's part which led to her plea, and such failure prevented the PCRA court from conducting a meaningful review of this issue. Thus, we conclude that Appellant's final claim is waived. See Bonnett, supra.[3]

Order affirmed.

---

[3] Even if Appellant properly had preserved this claim for appellate review, following our review of the record, we would agree with the PCRA court that Appellant entered her plea knowingly and voluntarily, and that trial counsel represented her effectively throughout that process.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2020