J-A03033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW J. NELSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER KRESGE | : | No. 1417 EDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2009-FC-1636

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED FEBRUARY 23, 2022**

M.N. (Father) files this appeal from the order dated June 16, 2021, and entered June 17, 2021,[1] in the Lehigh County Court of Common Pleas, granting in part and denying in part Father's motion for reconsideration and modifying the physical custody schedule as to his minor son, Z.K., born in June 2009 (Child or the Child).  After review, we affirm the trial court's order.

---

[1] The subject order was dated June 16, 2021.  However, notice pursuant to Pa.R.C.P. 236(b) was not provided until June 17, 2021.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given."  ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (citations omitted).

Father and J.K. (Mother) are the biological parents of Child. Litigation commenced in December 2009 with a Complaint for Custody and has been ongoing and contentious.[2]

Most recently, by order of December 18, 2017 (the December 2017 order), the court awarded the parties shared legal custody. Order, 12/18/17, at ¶ 1. This included consultation and cooperation on major decisions affecting Child, *i.e.* education, religion, and health. ***Id.*** The court further granted Mother primary physical custody and Father partial physical custody on a two-week schedule.[3] ***Id.*** at ¶¶ 2, 3. During week one, Father was to exercise physical custody from after school Wednesday until return to school Friday morning, or 10:00 a.m. at the Whitehall Police Department if no school. ***Id.*** at ¶ 3. During week two, Father was to exercise physical custody after school

---

[2] The extensive case history includes a prior appeal to this Court docketed at 330 EDA 2017 vacating the December 2016 custody order on appeal and directing that upon remand, the prior order of shared physical custody shall be re-imposed.

[3] To the extent Father's counsel raised a claim during oral argument, any claims related to or challenges to this order would not only be untimely but would also be waived. Pa.R.A.P. 903(a) (stating, "[T]he notice of appeal required by Rule 902 . . . shall be filed within 30 days after the entry of the order from which the appeal is taken."); ***see also Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); ***see also In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting ***In re A.C.***, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); ***see also In re M.Z.T.M.W.***, 163 A.3d 462, 465-66 (Pa. Super. 2017).

Thursday until return to school Monday morning, or 10:00 a.m. at the Whitehall Police Department if no school. *Id.* Aside from a holiday and vacation schedule, *id.* at ¶¶ 4, 5, the order further provided for "reasonable daily telephone access" for the non-custodial parent for no more than 20 minutes, *id.* at ¶ 9, as well as advance notice of medical appointments and/or treatment, *id.* at ¶ 8. Moreover, among other provisions, the order prohibited arguments and heated conversations in Child's presence, *id.* at ¶ 12, as well as derogatory language and attempts at alienation,[4] *id.* at ¶¶ 11, 13.

After difficulty with custodial exchanges prior to Father's custodial time in June 2019, which persisted, Father filed an Emergency Petition for Special Relief. Pursuant to order of September 11, 2019 (the September 2019 order), the court maintained the December 2017 order, with the modification that

_____

[4] Paragraph 11 of the December 2017 order stated:

> The parties shall not undertake or allow by any other person the poisoning of the minor child's mind against one of the other parties by conversation which includes any critical, hostile, or condemning language, or in any way derogates the other party or extended family members.

Order, 12/18/17, at ¶ 11. Further, paragraph 13 of the order stated:

> Neither party shall attempt, or condone any attempt directly or indirectly, by any artifice or subterfuge whatsoever, to estrange child from the other parent, or to injure or impair the mutual love and affection of the child. At all times each parent shall encourage and foster in the child a sincere respect and affection for the other parent and shall not hamper the natural development of the child's love and respect for the other parent.

*Id.* at ¶ 13.

Child continue counseling, and directed the parties to file any petition to modify or petition for contempt within 30 days if they desired. Order, 9/17/19. As a result, Mother then filed petitions to modify and for contempt on October 2, 2019, and Father filed petitions to modify and for contempt on October 8, 2019.[5] Among other things, Mother sought reduction of Father's partial physical custody to every other weekend and a dinner visit, and Father sought primary physical custody and supervised partial physical custody for Mother, as well as make-up custodial time and attorney's fees.[6]

The court conducted a custody trial September 10, 2020, September 14, 2020, September 15, 2020, September 17, 2020, October 15, 2020, November 6, 2020, and December 14, 2020.[7] Both Mother and Father were

---

[5] In the interim, each party additionally filed petitions for special relief and answers and counterclaims thereto which the court disposed of by order of December 20, 2019 (the December 2019 order), after hearings on December 4, 2019, and December 9, 2019.

[6] Despite seeking primary physical custody in his pleading, at the time of trial, Father testified that he was requesting shared physical custody. **See** N.T., 11/6/20, at 134, 252.

[7] The Honorable James T. Anthony presided over this trial. The Honorable Douglas G. Reichley had previously presided over this matter.

present and represented by counsel. Mother and Father each testified on their own behalf. The court further took testimony, *in camera*, of Child.[8, 9]

Additionally, Mother presented the testimony of Alfred Stirba, IV, Esquire, Child's guardian *ad litem* (GAL);[10] S.H., Mother's fiancé; and Damond Pascoe, a fellow parent involved in local children's sports programs. Father

_____

[8] Pursuant to motion *in limine*, filed October 29, 2020, Father sought to preclude the testimony of Child. In moving to preclude Child's testimony, Father argued, *inter alia*, that the record contained extensive testimony from Child over the last five years; that Father would stipulate to Child's preference, which is consistent with Mother's requested relief; that Child's preference lacks evidentiary weight and probative value; that "Child has been instructed and prepared to provide testimony in Mother's favor;" that, given Child's age and intelligence, "his testimony may be embellished or fabricated so as to obtain his desired result." Plaintiff's Motion in Limine to Preclude Testimony of the Minor Child, 10/29/20, at 1-5. The court denied Father's motion by order entered December 14, 2020.

Child testified that he does not feel comfortable in Father's home. He stated, "I never feel comfortable. I am always on edge, never knowing what is going to happen." N.T., 12/14/20, at 20. While noting that he loves Father, Child, therefore, expressed a desire for shorter visits with Father. *Id.* at 26.

[9] Over the course of the trial, both parties additionally presented numerous exhibits which were forwarded electronically as part of the supplemental certified record. We observe that Exhibit P-2, a posting of sheriff's sale, is not included with the supplemental certified record. Further, the copy of Exhibit P-15, meant to demonstrate Father's missed custodial time, while included, does not reflect the intended and explained color codes related to Father's exercise of custodial time. We, however, do not find this detrimental to our review. In particular, as to Exhibit P-15, Father provided detailed and lengthy testimony as to his missed custodial time and this exhibit. N.T., 11/6/20, at 56-96; N.T., 10/15/20, at 216-60.

[10] The court appointed the GAL for Child pursuant to the December 2019 order. *See* Order, 12/20/19. The GAL opined that the current custody schedule should remain without modification. *See* N.T., 9/14/20, at 26-27.

presented the testimony of Nancy Miller, Psy.D., a psychologist with Otto Psychological Associates, L.L.C., who was accepted as an expert and conducted a custody evaluation;[11] Maria Heaton, M.S., NNC, LPC, who previously provided counseling; and Todd Harder, a fellow parent involved in local children's sports programs.

Subsequently, the court issued a final custody order on February 12, 2021 (the February 2021 order), denying Mother's petitions for modification and for contempt and denying Father's petitions for modification and for contempt. *See* Order, 2/12/21, at ¶ 1. The court awarded the parties shared legal custody. *See id.* at ¶ 2. As to physical custody, the court again granted Mother primary custody, with partial physical custody to Father on a two-week schedule following the same schedule previously ordered. *See id.* at ¶¶ 3a., 3b. All exchanges during summer or when there is no school were to occur

_____

[11] Dr. Miller's report was admitted as Exhibit P-1. Notably, the court appointed Otto Psychological Associates for the purpose of a custody evaluation, including a determination as to parental alienation, pursuant to order of December 20, 2019. *See* Order, 12/20/19. Dr. Miller observed "a strong suspicion of parental alienation." Exhibit P-1, at 26. She indicated that Mother "appears to be alienating [Child] against Father, even if she has done so unintentionally," noting "an underlying message" of negativity associated with going with Father. *Id.* at 28.

As such, Dr. Miller offered a recommendation of shared physical custody, specifically, a week-on week-off alternating schedule. *Id.* at 29. To achieve this, she proposed a 30-day transition. *Id.* at 29-30. In so recommending, Dr. Miller opined that awarding Mother primary physical would be "harmful" and only serve to reinforce Child's fears and anxieties. *Id.* at 30. Dr. Miller further advocated that the parties engage in individual therapy, reunification therapy, and co-parenting counseling. *Id.* at 30-31.

at the Whitehall Police Department unless otherwise agreed in writing. *See id.* at ¶ 3c. The court further set forth a holiday schedule, *id.* at ¶ 4, provided for transportation, *id.* at ¶ 6, and for telephone contact, *id.* at ¶ 10. Among other things, the order also provided for the encouragement of a relationship with the other party and prohibited action to thwart such a relationship, including disparagement. *See id.* at ¶ 11.

On March 2, 2021, Father filed a motion for reconsideration raising many of the same issues raised in the instant appeal. By order of March 4, 2021, the court granted Father's motion and agreed to reconsider its February 12, 2021 order. The court further scheduled a hearing for April 7, 2021.[12] *See* Order, 3/5/21.

By order dated June 16, 2021, and entered June 17, 2021, Father's motion for reconsideration was granted in part and denied in part. *See* Order, 6/17/21. The court modified the physical custody schedule as to week two to include a dinner visit from Tuesday after school, or 4:00 p.m. if no school, until 7:30 p.m. with return to the Whitehall Police Department. *See id.* at ¶ 2b. Notably, the court further provided an analysis of the custody factors. *See id.* at n.1.

Thereafter, on July 15, 2021, Father, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on

---

[12] The notes of testimony of this hearing are not part of the certified record. Nevertheless, we do not find them necessary for disposition of Father's appeal.

appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[13]   The court issued a

Pa.R.A.P. 1925(a) opinion on August 19, 2021.

On appeal, Father raises the following issues for our review:

A. Whether the trial court committed an error of law and abuse of discretion in issuing the Order entered on June 17, 2021 as it failed to provide Father with any make up time for the one hundred and nineteen (119) overnights with the Child that Mother denied Father from June of 2019 to May of 2020?

B. Whether the trial court committed an error of law and abuse of discretion in issuing the Order entered on June 17, 2021 as it failed to appropriately consider and adopt the recommendations of the court-appointed expert, Nancy Miller, Psy.D., who conducted a comprehensive custody evaluation and issued a report to the court and counsel for the parties on May 1, 2020, which report was presented to the court along with Dr. Miller's uncontroverted and competent expert testimony?

C. Whether the trial court committed an error of law and abuse of discretion in denying Father's October 8, 2019 Petition for Contempt in light of the facts and evidence of record elicited at trial in this matter?

D. Whether the trial court committed an error of law and abuse of discretion in providing Father with a dinner visit on Tuesday of "week 2[,]" rather than an overnight, considering the evidence of record elicited at trial regarding Mother's actions in thwarting and interfering with Father's custodial time, and evidence as to the high conflict nature of this matter which warrants a reduction in custodial exchanges and contact between Mother and Father, not an increase?

_____

[13]   *See* Pa.R.A.P. 1701(b)(3) (stating, in part, "Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other government unit.").

E. Whether the trial court committed an error of law and abuse of discretion in denying Father's October 29, 2021 Motion in Limine to Preclude the Testimony of the Minor Child?

F. Whether the trial court committed an error of law and abuse of discretion in issuing the Order entered on June 17, 2021 as it failed to appropriately analyze and apply the factors identified in 23 [Pa.C.S.A.] § 5328 in light of the facts and evidence of record elicited at trial in this matter, specifically, custody factors 1, 5, 6, 7, 8, 9, 13 and 16, (as more specifically set forth in Father's [Pa.R.A.P.] 1925(a)(2) Statement and the Argument section of this brief) rendering the subject Order contrary to the best interests and permanent welfare of the Child?

G. Whether the trial court committed an error of law and abuse of discretion in arbitrarily allowing and disallowing certain testimony regarding past incidents which were already the subject of prior hearing in this matter, despite objections made by counsel for Father?

H. Whether the trial court committed an error of law and abuse of discretion in concluding that Mother's withholding of custody from Father was unintentional as the evidence and testimony of record fail to support that conclusion?

I. Whether the trial court committed an error of law and abuse of discretion in failing to address the clear parental alienation by Mother against Father and failing to provide Father shared physical custody and substantial make up time with the Child in consideration of all of the facts and evidence of record, and despite the fact that the court conceded "that Mother may in fact be engaging in behavior that is causing some parental alienation, though it may not be intentional[?]" (Exhibit "A" at footnote i., ¶ 8).

J. Whether the trial court committed an error of law and abuse of discretion in failing to include an enforcement mechanism in the Order given Mother's history of withholding the Child and failing to abide by the court orders?

K. Whether the trial court committed an error of law and abuse of discretion in failing to timely provide the forum to allow Father to seek redress for Mother's conduct in withholding the Child as Father's Petition for Contempt and Petition for Modification were filed on October 8, 2019 and trial did not commence until September 10, 2020?

Father's Brief at 4-8 (some capitalization modified; suggested answers omitted).

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

This Court consistently has held:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)). In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable

as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. **See E.D. v. M.P.**, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, with regard to the Custody Act, we have stated as follows:

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. *Id.*

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (emphasis in original).

Turning to Father's issues on appeal,[14] we begin with his sixth, wherein

he challenges the trial court's findings with respect to the Section 5328(a)

_____

[14] While we note with disapproval procedural deficiencies related to Father's brief, in particular Father's argument section is devoid of the required citation requirements in portions, we decline to take any action as this does not hamper our appellate review. We discern the general issues raised and related argument. *See* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); *see also* Pa.R.A.P. 2119(a), (b), (e).

best interest factors, asserting they are "unreasonable and unsupported by the facts and evidence of record[] and are contrary to the best interests and permanent welfare of the Child." Father's Brief at 38. Specifically, Father challenges the court's findings as to factors 1, 5, 6, 7, 8, 9, 13, and 16. **See id.** at 38-55. As to these factors, the court found as follows:

1. *Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.* This factor is neutral. There was evidence presented that Father only allows the Child to contact Mother on Father's cell phone, and that Father listens to these conversations. Father denied this and testified that he encourages phone contact with Mother when the Child is in his custody. Father testified that when he is on the phone with the Child, Mother asks the Child to get off the phone with Father. Mother denied this and testified she allows frequent contact between the Child and Father. While Father presented evidence that he missed multiple overnight visits with the Child, this Court does not find that Mother was intentionally withholding the Child from Father. Rather, at the time of custody exchanges, the Child became visibly upset and would not go with Father. As one example, there was evidence presented that rather was to exercise custody following the Child's wrestling practice in January 2020; however, upon seeing Father, the Child became extremely upset, and refused to go with Father. After approximately one hour, school officials and the Child's guardian *ad litem* thought it was best to have the Child go home with Mother. This resulted in no custody exchange.

. . .

5. *The availability of extended family.* This factor is neutral. Father's family lives in New England, and the Child sees his paternal grandparents regularly, and has a close relationship with them. Father is remarried, and he and his wife have a 2-year-old son, [W.], together. Mother's direct family is outside the Lehigh Valley, but she has extended family in the area. According to the Child, he sees his maternal great grandparents—whom he refers to as nana and pop-pop—and his fraternal aunts, uncles, and cousins often. Mother is in a committed relationship, but does not live with her significant other. Mother has another son, [O.], from

a previous relationship. Per Dr. Miller—the expert relied upon by Father—[O.] was 15 years old as of February [], 2020.

6. *The child's sibling relationships.* This weighs slightly in favor of Mother, [t]he Child and his half-brother, [O.], have a very close bond, and share similar interests. The Child looks up to [O.] as a role model. The Child also has a good relationship with [W.], but because of the age difference, they do not share the same interests.

7. *The well-reasoned preference of the child, based on the child's maturity and judgment.* This weighs in favor of Mother. The Child stated he prefers to spend more time with Mother[] and feels more comfortable at Mother's house. The Child states his friends are in Mother's neighborhood, and that he does not really have any friends in Father's neighborhood. The Child indicated that Father does not allow him to speak with [O.] when he is in Father's custody. He also stated he cannot speak privately with Mother when he is at Father's house. When he is in Mother's custody, he is free to text or call Father whenever he chooses. According to the Child, Father is not home much when he is in Father's custody, and he does not get along with his [stepmother]. The Child stated his [stepmother] is always recording him when he is at their house. He also indicated disappointment with missing his sporting events when in Father's custody. During the [c]ourt's interview with the Child, he was well-spoken and provided thoughtful reasons for his preference.

8. *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.* This factor weighs slightly in favor of Father. Both parties have engaged in behavior that paints the other parent in a bad light. Both parties accuse the other of making unflattering remarks about the other parent in front of the Child. However, Dr. Miller suspects that Mother is alienating the Child against Father either consciously or unconsciously. The [c]ourt concedes that Mother may in fact be engaging in behavior that is causing some parental alienation, though it may not be intentional.

9. *Which party is more likely to maintain it loving, stable, consistent and nurturing relationship with tine child adequate for the child's emotional needs.* This factor weighs slightly in favor of Mother. Both parents are capable of maintaining a relationship

- 15 -

with the Child that will meet his emotional needs. However, at this time, Mother appears more capable of providing a stable and, nurturing environment due to the Child's preference of being with Mother, and his continued hesitance at being at Father's. Even Dr. Miller stated in her report that Mother is "naturally more nurturing."

13. *The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.* This factor is neutral. This is a high conflict case. Both parties blame the other for the strained relationship between Father and the Child. Their testimony consisted primarily of examples of how each believes the other has failed in their parenting responsibilities. Both parties exhibit outward hostility towards each other and appear to be unwilling to work together in the best interests of the Child.

16. *Any other relevant factor.* No other factors were considered in this matter.

Order, 6/17/21, at n.1.

As to factor 1, which party is more likely to encourage and permit frequent and continuing contact between the child and another party, Father argues that the trial court erred in finding this factor neutral given the evidence of Mother's parental alienation and his missed overnight custody. **See** Father's Brief at 39-42. Highlighting a "false and spurious" Protection from Abuse petition, Father purports a lack of evidence of Mother's encouragement of frequent and continuing contact.[15] **Id.** at 40-41.

---

[15] By way of background, Mother filed a Protection from Abuse petition on August 9, 2019, which the court dismissed on August 20, 2019, after a hearing.

As to factor 5, the availability of extended family, Father asserts that the trial court erred in finding this factor neutral. *See id.* at 42-44. He contends that this factor should have been weighed in his favor, noting the determination related to this factor in the prior order of December 18, 2017 and Child's continued positive relationship with his paternal family. *See id.* at 42-43.

As to factor 6, the child's sibling relationships, Father argues that the trial court erred in finding this factor in favor of Mother. *See id.* at 44-46. Father suggests that the court should have found this factor to be neutral given that Child has a half-sibling through each parent. *See id.* at 45-46. He explains that Mother's alienation limited Child's time with his half-brother through Father. *See id.* at 44. While recognizing Child's close relationship with his half-brother through Mother, Father posits that finding this factor in favor of Mother rewards Mother's alienation. *See id.* at 45.

As to factor 7, the well-reasoned preference of the child, based on the child's maturity and judgment, Father asserts that the trial court erred in finding this factor in favor of Mother. *See id.* at 46-48. Noting the testimony of Dr. Miller, Father indicates that Child's preference cannot be considered "well-reasoned." *Id.* at 46.

As to factor 8, the attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm, Father argues that that the trial court erred in finding this factor in favor of Mother. Instead, he

suggests this factor should "should be weighed heavily in favor of Father and considered a factor of paramount importance in this case." ***Id.*** at 48-49. Of significance, Father raises Mother's parental alienation. ***See id.***

As to factor 9, which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, Father asserts error in weighing this factor in favor of Mother and not in favor of Father. ***See id.*** at 49-50. Father indicates that finding this factor in favor of Mother again rewards her alienation of Father and thwarting of his relationship with Child. ***See id.***

As to factor 13, the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, Father claims error in finding this factor neutral and not in favor of Father. ***See id.*** at 50-52. Father argues that any conflict is attributable to Mother. ***See id.***

As to factor 16, any other relevant factor, Father argues that the trial court erred in not considering Mother's false allegations of abuse. ***Id.*** at 52-55.

With regard to the custody factors, although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013). Critically, as this Court stated in ***M.J.M.***:

**It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added).

In construing Father's challenge, we interpret the issue at its core as a dispute to the trial court's findings of fact and determinations regarding credibility and weight of the evidence, as well as the weight attributed to certain factors. Father, in essence, questions the trial court's conclusions and assessments and seeks for this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As we stated in *King v. King*, 889 A.2d 630 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the right decision; rather, we must consider whether, based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion[.]" *Id.* at 632 (citation and quotation marks omitted). After a thorough review of the record, we find no abuse of discretion. To the extent Father challenges the weight attributed to any factor by the trial court,

we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. **See M.J.M.**, 63 A.3d at 339.

In the case *sub judice*, the trial court reasonably analyzed and addressed each factor under Section 5328(a). **See** Order, 6/17/21, at n.1. After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As such, Father's claim is without merit.

Next, we consider Father's first, third, eighth, and ninth issues relating to make-up time, contempt, and parental alienation together as they are interrelated.[16] Father challenges the trial court's failure to provide make-up time for missed overnight custodial time. **See** Father's Brief at 17-20. Father argues that he provided "detailed and credible" testimony as to missing 119 overnight visits with Child from June 2019 to May 2020. **Id.** at 18. Noting the behavior of the parties at custodial exchanges, Father then questions Mother's explanation for the sudden ability in May 2020 to exchange custody of Child successfully. **See id.** at 19.

Father further asserts that the trial court erred and/or abused its discretion in denying his petition for contempt without explanation, despite

---

[16] We likewise recognize that the trial court addressed these issues together in its Rule 1925(a) opinion.

support in the record. *See id.* at 28-32. Father points to Mother's behavior surrounding custodial exchanges, including derogatory statements, resulting in missed overnight custodial time, and maintains that, regardless of intent, Mother failed to exercise appropriate parental authority. *See id.* at 29-30. In addition, he notes the corroboration of a finding of parental alienation. *See id.* at 30. Father argues:

> In failing to find Mother in [c]ontempt for refusing to assure Father received custody of the Child, for alienating Father from the Child thereby causing the Child's apparent hesitancy to go with his Father, and for failing to and/or refusing to exercise her parental authority over the Child to ensure that Father received custody of the Child, the [t]rial [c]ourt made an error of law. Father also suggests that allowing Mother to act in this manner without consequence would not only endorse this behavior in the future for Mother[] but set a poor precedent for other custody litigants in the future.

*Id.* at 30-31. Father also raises Mother's failure to notify him in advance as to several medical appointments for Child. *See id.* at 31-32. He notes the trial court's prior finding of contempt against Mother for withholding custody. *See id.* at 32. Father concludes:

> Mother's actions with regard to the Child's medical care, coupled with her derogatory statements about Father to the Child and her refusal to provide Father with his custodial time, make it clear that Mother is attempting to systematically exclude Father from the Child's life. Mother must be found to be in [c]ontempt of the [December 2017 order] based on the simple evidence of record, including Mother's own admissions.

*Id.* at 32.

Father likewise challenges the trial court's finding that Mother's withholding of custody was unintentional. *See id.* at 58-60. In arguing the

- 21 -

evidence contradicts such a finding, Father highlights his extensive testimony, not found incredible, as well as that of Dr. Miller, and contends that such evidence refutes any finding that Mother's withholding of Child was unintentional. *See id.* at 59-60. Moreover, relatedly, despite Dr. Miller's unequivocal conclusion of parental alienation, Father questions the trial court's finding of possible unintentional alienation and failure to address the same. *See id.* at 60-61. He avers:

> The [c]ourt has done absolutely nothing to address Mother's alienation of Father. The [c]ourt's failure to address the alienation in any way will only cause to reinforce and escalate Mother's alienating behaviors[] and cause further damage to the Child's already fragile relationship with Father. The [t]rial [c]ourt simply concluded that Father has been alienated, possibly unintentionally by Mother, but chose to do absolutely nothing to address said alienation. It is an unfathomable error of law and abuse of discretion for the [t]rial [c]ourt to ignore the clear alienation in this case and do nothing to attempt to address or remedy it in the best interests of the Child.

*Id.* at 61.

As to these issues, the trial court placed the focus on Child. The court reasoned:

> Here, [the court] determined that Mother did not willfully withhold the Child from Father. Rather, due to the Child's negative reactions at custody exchanges, Mother determined it was in his best interest to take the Child with her, rather than forcing him to go with Father. The Child's *guardian ad litem* observed one of these exchanges and, along with other adults present, determined it was best for the Child to go with Mother rather than complete the exchange. Notably, the missed days that Father sought to make-up were due to the Child's unwillingness to go with Father. Ordering make-up days and forcing the Child to go with Father for additional overnights would not be in his best interest.

Additionally, while [the court] acknowledged that Mother may be engaging in unintentional behavior that is causing some parental alienation, this is but one factor [the court] used in making [its] decision. Based on the record as a whole, and as set forth in [the court's] analysis of the custody factors, [the court] found it was in the Child's best interest to maintain the current overnight schedule. As such, [the court] do[es] not believe [it] abused [its] discretion.

Trial Ct. Op., 8/19/21, at 3 (unpaginated) (footnote omitted).

As to review of an order of civil contempt,

When we review a trial court's finding of contempt, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This Court also has stated that each court is the exclusive judge of contempts against its process.

*G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (internal citation and quotations omitted). We previously determined:

A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (internal citation omitted).

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order which was allegedly disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *See Stahl v. Redcay*, 897 A.2d

478, 489 (Pa. Super. 2006); *see also Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa. Super. 2009); *see also* 23 Pa.C.S. § 5323(g) (contempt for noncompliance with any custody order).

Upon review, the trial court's determination is supported by competent evidence of record. Notably, the testimony of Mother and her fiancé reveals the lack of intentionality related to any withholding of custody. **See** N.T., 12/14/20, at 79-81; N.T., 9/14/20, at 81-82. In an exchange with the court regarding her efforts, Mother testified as follows:

> MOTHER: Yes. I attempted in numerous ways, encouraged in numerous ways as well as I think it would -- [Child] --
>
> THE COURT: I am not talking about the psychological ways. I have to understand why the exchanges didn't take place.
>
> Why didn't the exchanges take place?
>
> MOTHER: [Father] and I both struggled to make the exchange. You could not get [Child] out of the car. There were exchanges that did happen. I think what we need to recognize is that there was a problem with our son. We can't change that.
>
> THE COURT: It is very clear to the [c]ourt that some of the exchanges were very troublesome. There was a lot of emotion, crying -- I get it. So are so you saying you made your best effort to do these exchanges?
>
> MOTHER: I am saying -- yes. Not only that I gave up my custodial time, I have sat in places for hours, encouraged -- text message after text message, trying everything. . . .
>
> \*   \*   \*
>
> THE COURT: . . . I just want to know what efforts you made to make these exchanges.
>
> MOTHER: Numerous. Different locations, offering my custodial -- offering different suggestions, walking the park, basketball in my back alley, everything I could possibly think of.

Dinner visits, lunch visits, smaller visits building up to bigger visits. Anything I could do to encourage communication between them, suggesting [Father] call [Child]. . . .

\* \* \*

THE COURT: . . .[Y]ou are saying you attempted to make exchanges because of the emotions of your son and what not, that did not occur?

MOTHER: Yes. I tried everything. The school -- everybody.

N.T., 12/14/20 (Mother's testimony), at 79-81. Further, Child's own testimony confirmed Mother's encouragement. *See* N.T., 12/14/20 (Interview of Minor Child in Chambers), at 21 ("My mom would be out of the car trying to get me out."). Similarly, Mother's testimony substantiates a lack of disregard on her part as to the provision for advance notification of medical appointments and/or treatment. *See* N.T., 12/14/20 (Mother's testimony), at 60-68, 70-71, 73, 77. We therefore discern no abuse of discretion and do not disturb the trial court's finding.

With his second issue, Father addresses the expert testimony of Dr. Nancy Miller. Father notes that Dr. Miller suggested that Child was getting the message from Mother or her household that loyalty to and a positive relationship with Father was a sign of disloyalty to Mother and found a "strong suspicion of parental alienation." Father's Brief at 22-24. As a result, Father explains that Dr. Miller recommended shared physical custody, and primary physical custody for Father should Mother remain incapable of exchanging physical custody. *See id.* at 25. Father maintains that, notwithstanding, the trial court dismissed Dr. Miller's findings and recommendations without any

evidence presented to the contrary and without any stated basis for so doing. *See id.* at 26-27.

Related to Dr. Miller, the trial court stated:

> Regarding a court's duty to consider an expert's opinion in custody matters, while the court cannot completely discount an expert's uncontradicted or unqualified opinion, as long as the court's conclusions are founded in the record, the court is not obligated to accept the conclusions of the expert. [**Nomland v. Nomland**], 813 A.2d 850, 854 (Pa. Super. 2002).
>
> [The court] thoroughly considered Dr. Miller's report and expert testimony in making [its] custody determination[] but reached a different conclusion. [The court] believe[s] that ultimately a 50/50 physical custody schedule will be best for the Child, but while Father and Child continue to work on their relationship, it serves the Child's best interest to keep the overnight schedule as is. Furthermore, in determining that factor 8 weighs slightly in favor of Father, [the court] accepted Dr. Miller's opinion that Mother may be engaging in behavior that is alienating the Child. Notably, Dr. Miller opined that Mother's actions may be unintentional, and [the court] found this to be true based on the record as a whole. [The court] submits [it] did not err in reaching a different conclusion than Dr. Miller regarding the physical custody schedule.

Trial Ct. Op. at 4 (unpaginated) (footnote omitted).

On the issue of a court's duty to consider expert testimony, this Court previously has stated:

> The trial court was under no obligation to delegate its decision-making authority to [an expert]. *See, e.g., K.W.B. v. E.A.B.,* 698 A.2d 609, 613 ([Pa. Super.] 1997). It is an abuse of discretion, however, for a trial court to dismiss "as unpersuasive, and to totally discount, uncontradicted expert testimony." *Murphey*[ *v. Hatala*, 504 A.2d 917, 922 (Pa. Super. 1986)]; *see also Rinehimer v. Rinehimer,* [485 A.2d 1166, 1169 (Pa. Super. 1984)] (while not required to accept their conclusions, "[t]he lower court was obligated to consider the testimony of the two experts[.]"); *Straub v. Tyahla,* [418 A.2d 472, 476 (Pa.

Super. 1980)] ("[W]e conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. *See Nomland* [ ]*,* 813 A.2d [at] 854 [] ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.") (citations and quotation marks omitted).

*M.A.T. v. G.S.T.*, 989 A.2d at 19-20.

Instantly, as explained in its Rule 1925(a) opinion, the trial court did indeed consider Dr. Miller's expert recommendation, and we conclude that the court's decision not to follow her recommendation is supported by competent evidence of record. *See M.A.T.*, 989 A.2d at 19-20; *Nomland*, 813 A.2d at 854. Significantly, we acknowledge the court referenced Dr. Miller's finding of alienation, intentional or unintentional, and determined that "Mother may in fact be alienating the Child against Father either consciously or unconsciously." Order, 6/17/21, at n.1 ¶ 8. Moreover, we again highlight Mother's and her fiancé's testimony as to Mother's encouragement at custodial exchanges and the lack of intentionality related to any withholding of custody. *See* N.T., 12/14/20, at 79-81. We further recognize their testimony recounting custodial exchanges. *See* N.T., 9/15/20, at 79; N.T., 9/14/20, at 81-83. Mother's fiancé observed, "Custodial exchanges have been very intense, very aggressive, very sad. It has definitely affected [Child]. I see

fear in a little boy's eyes that I have never seen fear in before." *Id.* at 81.

He reported "upset" and "emotional fear." *Id.* at 81, 83. Additionally, in

describing Child during these exchange moments, Mother testified:

> [He] was agitated, crying. . . . This would start at school. This would -- the night before we were having nightmares. Just agitation, very distraught.
>
> I would witness him throwing up before exchanges, having diarrhea, being very anxious, just pulling at his seatbelt, putting his hand on the door, rocking back and forth in the car. Just very uneasy, very unlike him and it escalated very quickly.

N.T., 9/15/20, at 80. Likewise, the GAL, who witnessed a custodial exchange

where Mother was not present following a wrestling practice in January 2020,

detailed Child backing away from Father and having a "breakdown." The GAL

explained, "[Child] was crying. He was sobbing. He was almost cowering

against the wall." N.T., 9/14/20, at 13, 15. Thus, we find no error of law or

abuse of discretion.

Next, as to his fourth issue, Father argues that the trial court erred

and/or abused its discretion in including an additional dinner visit as opposed

to an overnight visit in response to Mother's motion for reconsideration. *See*

Father's Brief at 33-34. In support thereof, Father references Dr. Miller's

opinion and recommendation, testimony supporting Mother's efforts to

interfere with and thwart Father's custodial time, as well as the high conflict

between the parties. *See id.* at 33. Father emphasizes that this provides

little additional time with Child and creates additional custodial exchanges.

*See id.* at 34.

The trial court reasoned that the reduction of in-person exchanges is not a reason to increase or reduce custodial time and points to the fact that during the summer an overnight custodial period would not reduce custodial exchanges between the parties. **See** Trial Ct. Op. at 4 (unpaginated). The court further explained that it did not find that additional overnight custodial time would be in Child's best interest "due to his unwillingness to go with Father for overnights." **Id.** at 4-5 (unpaginated). As indicated **supra**, the trial court analyzed and addressed each factor as required by Section 5328(a) in establishing its custody order, including the additional dinner visit. **See** 23 Pa.C.S. § 5328(a); **see also E.D.**, 33 A.3d at 79-80 n.2; **see also J.R.M.,** 33 A.3d at 652. As such, Father's claim is without merit.

With his fifth issue, Father argues that the trial court erred and/or abused its discretion in denying his motion *in limine* to preclude Child's testimony. **See** Father's Brief at 34-37. Father claims:

> As a result of the significant history in this matter of Mother alienating Father from the Child, the extensive recent testimony from the minor [c]hild contained in the [c]ourt's file in this matter, Father's willingness to [s]tipulate that the Child's expressed preference would be to live with Mother primarily, the interview of the Child performed by Dr. Miller which the [t]rial [c]ourt was apprised of in detail in Dr. Miller's [r]eport, and the clear alienation of Father by Mother which resulted in Father being denied [c]ustody of the Child for almost an entire year prior to [t]rial, the [c]ourt should have concluded that the Child's preference could not be considered well-reasoned, declined to interview the Child, and should have [g]ranted Father's Motion in Limine.

**Id.** at 34-35. Father further highlights that the prior presiding judge indicated that too much deference had been given to Child's preference. **See id.** at 35-

36. Moreover, Father suggests that allowing Child to testify again permitted Child to repeat negative statements and beliefs acquired from Mother and afforded Mother "ample time to prepare and instruct the Child" explicitly or implicitly as to his testimony. *Id.* at 36-37. Additionally, Father indicates that testifying again served to only reinforce Child's negativity toward Father. *Id.* at 37.

As to the denial of Father's motion *in limine* to preclude Child's testimony, the trial court reasoned the interview of a child is discretionary and that in the instant matter such interview was essential to assess Child, particularly as the presiding judge was newly assigned and had not been present for Child's prior testimony. *See* Trial Ct. Op. at 5 (unpaginated). The court stated:

> It is within the [c]ount's discretion whether to interview a child in a custody matter. [Pa.R.Civ.P. 1915.11(b)]. "Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must he carefully considered in determining the child's best interest." [**McMillen v. McMillen**], 602 A.2d 845, 847 [(Pa. 1992)]. As this matter was reassigned to me after the Child previously testified, this trial was the first opportunity [the court] had to interview the Child and hear his responses. It was necessary for [the court] to judge the Child's maturity, intelligence, and overall credibility— matters which are not properly done by reading a transcript, but rather hearing from the Child in person[—]in deciding how much weight to give his preference. As such, . . .[the court] did not err in denying Father's Motion in Limine and allowing the Child to testify. . . .

*Id.*

- 30 -

As to the interview of a child, Pennsylvania Rule of Civil Procedure 1915.11(b) is discretionary and does not mandate that a trial court interview a child in a custody matter. Pa.R.Civ.P. 1915.11(b). Likewise, Pennsylvania Rule of Civil Procedure 1915.11(c) does not mandate a child's attendance at a custody hearing. Rule 1915.11 provides, in relevant part:

> Rule 1915.11. Appointment of Attorney for Child. Interview of Child. Attendance of Child at Hearing or Conference
>
> \*   \*   \*
>
> (b) The court **may** interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interview the child under the supervision of the court. The interview shall be part of the record.
>
> (c) Unless otherwise directed by the court, the child who is the subject of the action shall not be required to attend a hearing before the court or a conference.

Pa.R.Civ.P. 1915.11(b), (c) (emphasis added).

Despite the discretionary aspect, we recognize that we have previously found that there are circumstances where the failure to interview a child is an abuse of discretion. In **E.C.S. v. M.C.S.**, 256 A.3d 449 (Pa. Super. 2021), we stated:

> [W]e clarify that, while Rule 1915.11 provides the trial court with the option of whether to interview the child, its decision is still subject to our review for an abuse of discretion. Although the presence of a child "is not always necessary" and while "the child should not be required to attend a hearing…in every case," **see** Comment to Rule 1915.11, it follows that there are some instances where the court's failure to interview the child

constitutes an abuse of discretion. *See also* [*Bovard v. Baker*, 775 A.2d 835, 840 (Pa. Super. 2001)], *supra*.

Upon our review of the relevant precedents and persuasive authorities, it is apparent the court will not abuse its discretion when it forgoes a child interview, in cases involving only a narrow or discrete, custody-related issue, as opposed to a material change in the custody award. *See* [*T.D. v. E.D.*, 194 A.3d 1119, 1126-27 (Pa. Super. 2018)](relating to unaccompanied travel); *see also* [*A.M. v. J.L.H.*, 251 A.3d. 1226 (Pa. Super. 2021)], *supra* (relating to the presence of the mother's boyfriend during her custody time). After all, when the trial court resolves a "discrete, custody-related issue," we have held that a complete Section 5328(a) analysis is not always necessary. *See* [*M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa. Super. 2014)]. Similarly, we have found discretion is not abused when neither party seeks an interview. *See* [*K.L.C.S. v. D.W.S.*, 245 A.3d 1071 (Table), 2020 WL 7353815 (Pa. Super. 2020)], *supra; and see* [*E.H. v. Y.R.*, 241 A.3d 430 (Table), 2020 WL 6106650 (Pa. Super. 2020)], *supra*.

Conversely, when a party explicitly requests the interview, in a case involving a substantive custody award or a material change from the custody arrangement, the court runs the risk of abusing its discretion when it declines to interview the child. *See Bovard, supra*. But even in such cases, courts may decline the interview if there are ample reasons why the experience would be traumatic or disruptive to the child. *See* Comment to Rule 1915.11; *see also T.D.*, 194 A.3d at 1126.

*E.C.S.*, 256 A.3d at 457.

This Court finds that Father's argument regarding interview of Child lacks merit. Upon review, we find no abuse of discretion. This matter involves a substantive custody award and not a narrow, discrete issue related thereto. Given that the presiding judge was newly appointed and had not previously had the opportunity to evaluate Child, as well as the amount of time that had

passed since Dr. Miller's interview of Child, the trial court was justified in assessing Child and his preference and attributing it the appropriate weight.

With his seventh issue, Father argues that the trial court erred and/or abused its discretion in allowing testimony as to several prior incidents which were the subject of the December 4, 2019, and December 9, 2019, hearings as to the parties' petitions for special relief and disposed of by the December 2019 order. Father specifically points to the testimony of Mother's fiancé and suggests that, despite the court taking Father's objection as to this testimony under advisement, it appears the court considered the testimony of Mother's fiancé. **See** Father's Brief at 55-58. In so doing, Father contends that the court allowed Mother to relitigate issues which were the subject of prior hearings and disposition, resulting in prejudice. **See id.** at 57-58.

The trial court indicated that Father waived such issue and that he "fail[ed] to identify specifically what testimony he takes issue with." Trial Ct. Op. at 6 (unpaginated).

Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) requires an appellant in a Children's Fast Track matter to submit a concise statement of errors complained of on appeal along with the notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i) (stating, "The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal required by Rule 905[.]").

Where a Rule 1925(b) statement does not sufficiently identify the issues raised on appeal, this Court has found waiver of all issues on appeal and explained as follows:

> In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925." **Lord**, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." **Id.** This Court explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa. Super. 2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa. Super. 2001). "Even if the trial court correctly guesses the issues Appellants raise[] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." **Commonwealth v. Heggins**, 809 A.2d 908, 911 (Pa. Super. 2002).

**Kanter v. Epstein**, 866 A.2d 394, 400 (Pa. Super. 2004). We have further opined:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [**Lord**, **supra**,] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that **Lord**

- 34 -

should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

*Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006) (quoting

*Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001)).

While Father included this issue in his Rule 1925(b) statement, it is evident that his recitation of the issue is vague and lacks specificity. He states: "The trial court committed an error of law and abuse of discretion in arbitrarily allowing and disallowing certain testimony regarding past incidents which were already the subject of prior hearings in this matter, despite objections made by counsel for Father?" Appellant's Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(a), 7/15/21, at ¶ 7. In reviewing Father's Rule 1925(b) statement, it is unclear exactly what prior testimony Father is challenging and to what incidents he is referring. As such, we agree with the trial court that this issue is waived.

Even if the claim were not waived,[17] the trial court's analysis as set forth in the order and subsequent opinion reveal no reliance on testimony as to the prior incidents Father suggests in his argument regarding this issue. Moreover, while Father argues prejudice, indicating that he would have presented certain testimony in response, nothing prevented Father from so doing. Therefore, this issue would be meritless.

Next, as to his tenth issue, Father maintains that the court erred and/or abused its discretion by failing to include an enforcement mechanism in light

---

[17] Arguably, the trial court was aware of the testimony as to prior incidents referenced by Father and to which he objected during trial.

of the history of Mother's failure to comply with court orders. **See** Father's

Brief at 61-63. In so arguing, Father references the prior December 2019

order, which included potential future sanctions for failure to comply, and

acknowledges Mother's resulting compliance. **See id.** at 62. Father argues,

"In consideration of the extreme length of time Mother withheld custody of

the Child from Father, and her history of [c]ontempt of [c]ourt[,] which [the

court] should have been aware of, the June 17, 2021 Order should have

included an enforcement mechanism of some type, such as was included . . .

in the December 20, 2019 Order of Court, to attempt to induce Mother to

comply." **Id.** at 63. Father further suggests that the court, however, instead

focused on Mother's current compliance and the successful transfer of custody

at the time of trial. **See id.** at 63.

In support of the lack of specific inclusion of an enforcement mechanism

in the order in question, the trial court stated:

> Father alleges [the trial court] erred in failing to include an
> enforcement mechanism regarding custody exchanges due to the
> history of the parties. While it is unclear what "enforcement
> mechanism" Father wishes to have included, he has all the normal
> remedies available to him as in any custody matter, including
> seeking modification, contempt, or special relief.

Trial Ct. Op. at 6 (unpaginated).

We agree. To the extent Father references the December 2019 order,

which included potential monetary sanctions and a potential reduction in

physical custody, as noted by the trial court, Father always has the ability to

file for modification, contempt, or special relief. Hence, this issue fails.

Lastly, with his eleventh issue, Father claims error and/or abuse of discretion as a result of the trial court's lack of timeliness and delay. *See* Father's Brief at 63-64. Father argues that he was prejudiced not only by the reassignment of the presiding judge prior to trial, but by the amount of time it took from the filing of the petitions in question to the trial and from the trial to disposition. *See id.* Father asserts, "Through no fault of Father, [t]rial in this matter did not commence until eleven (11) months after he filed his October 8, 2019 Petition for Contempt and Petition for Modification, and did not conclude until December 14, 2020. Although Father is aware of the impact that the COVID-19 [p]andemic had on the [c]ourts, that is a wholly inadequate excuse for the delay of Father's Petitions being heard by the [c]ourt." *Id.* at 64. Father suggests that Mother's eventual compliance with the order resulting in resumption of his regular overnight custodial time correlated with the pre-trial conference conducted in June 2020. He states, "As Mother began to comply with the underlying Order as soon as the Pretrial Conference with the [c]ourt was scheduled, had said Pretrial Conference been scheduled in a timelier manner, Father likely would not have lost so many overnights with the Child." *Id.* He continues, "The lack of attention to this matter by the [c]ourt allowed Mother to continue to withhold the Child with impunity. Further, the delay in trial has more obvious impacts, such as hindering witnesses' ability to recall events which they are testifying about." *Id.*

The trial court reasoned that Father suffered no prejudice as the court was subject to an emergency order commencing on March 17, 2020, as a

result of the COVID-19 pandemic which limited the scheduling of trials. As such, the court indicated that, even if scheduled earlier, trial would have been cancelled. *See* Trial Ct. Op. at 6-7 (unpaginated).

As to disposition of custody matters, Pennsylvania Rule of Civil Procedure 1915.4. provides:

> **(a) Initial Contact With the Court.** Depending upon the procedure in the judicial district, the parties' initial in-person contact with the court (including, but not limited to a conference with a conference officer pursuant to Rule 1915.4-2, a conference with a judge, conciliation, mediation and/or class/seminar) shall be scheduled to occur not later than 45 days from the filing of a complaint or petition.
>
> **(b) Listing Trials Before the Court.** Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a praecipe, motion or request for trial, except as otherwise provided in this subdivision. If it is not the practice of the court to automatically schedule trials and neither party files a praecipe, motion or request for trial within 180 days of filing of the pleading, the court shall, sua sponte or on motion of a party, dismiss the matter unless a party has been granted an extension for good cause shown, or the court finds that dismissal is not in the best interests of the child. The extension shall not exceed 60 days beyond the 180 day limit. A further reasonable extension may be granted by the court upon agreement of the parties or when the court finds, on the record, compelling circumstances for a further reasonable extension. If an extension is granted and, thereafter, neither party files a praecipe, motion or request for trial within the time period allowed by the extension, the court shall, sua sponte or on the motion of a party, dismiss the matter unless the court finds that dismissal is not in the best interests of the child. A motion to dismiss, pursuant to this rule, shall be filed and served upon the opposing party. The opposing party shall have 20 days from the date of service to file an objection. If no objection is filed, the court shall dismiss the case. Prior to a sua sponte dismissal, the court shall notify the parties of an intent to dismiss the case unless an objection is filed within 20 days of the date of the notice.

**(c) Trial.** Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

**(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

**(e) Emergency or Special Relief.** Nothing in this rule shall preclude a party from seeking, nor a court from ordering, emergency or interim special relief at any time after the commencement of the action.

Pa.R.Civ.P. 1915.4.

Critically, the record fails to reveal that Father raised any prior objection as to timing and/or scheduling or made any requests for earlier dates during disposition of these petitions. Father, therefore, waived this issue by failing to raise it in the court below as the matter proceeded. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.")

(citations omitted); *see also **Bednarek v. Velazquez***, 830 A.2d 1267, 1270 (Pa. Super. 2003).

Regardless, we would be unable to rectify any delay as we cannot go back in time and provide Father an earlier hearing. Moreover, as a result of the COVID-19 pandemic and its impact on scheduling, it is unlikely that an earlier trial would have proceeded.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2022